SLIP OPINION

Cite as 2015 Ark. App. 600

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-15-157

| | | |
|---|---|---|
| JACKIE COLLINS | | **OPINION DELIVERED** OCTOBER 28, 2015 |
| | APPELLANT | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT [NO. CR-2004-1090] |
| V. | | |
| | | HONORABLE RANDY F. PHILHOURS, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**ROBERT J. GLADWIN, Chief Judge**

Appellant Jackie Collins appeals from the revocation of his probation by the Crittenden County Circuit Court. Appellant argues that the trial court's findings that he violated two of the conditions of his probationary sentence are against the preponderance of the evidence. We affirm.

On January 31, 2005, appellant pleaded guilty to burglary, a Class B felony, in the Crittenden County Circuit Court, case number CR-2004-1090, and was sentenced to forty-eight months' probation. On July 7, 2005, the State filed a petition for revocation of probation, and on September 8, 2005, appellant pleaded guilty to the revocation and was sentenced to 120 months' imprisonment in the Arkansas Department of Correction (ADC), with the imposition of an additional suspended sentence of 120 months.

Appellant was released on parole on November 4, 2008. The State filed its petition for revocation of suspended sentence on August 18, 2014, alleging the following violations:

(1) failure to pay fines, costs, and fees as directed; (2) failure to notify sheriff of current address and employment; and (3) commission of residential burglary and theft of property. After a hearing on November 26, 2014, appellant was found to have violated two conditions of his probation, (1) failure to pay fines, costs, and fees, and (2) failure to lead a law-abiding life, and was sentenced to 120 months in the ADC pursuant to a sentencing order filed on November 26, 2014. He filed a timely notice of appeal on December 9, 2014.

In a revocation proceeding, the trial court must find by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of his or her suspension or probation, and on appellate review, we do not reverse the trial court's decision unless it is clearly against the preponderance of the evidence. *Egger v. State*, 2015 Ark. App. 471, __ S.W.3d __; Ark. Code Ann. § 16-93-308(d) (Supp. 2015). Because the burdens are different, evidence that is insufficient for a criminal conviction may be sufficient for a probation or suspended-sentence revocation. *Id*. Since determination of a preponderance of the evidence turns on questions of credibility and weight to be given testimony, we defer to the trial court's superior position. *Id*. Furthermore, the State need only prove that the appellant committed one violation of the conditions in order to revoke appellant's sentence. *Peals v. State*, 2015 Ark. App. 1, 453 S.W.3d 151.

## I. *Failure to Pay Costs, Fines, and Fees*

Where the alleged violation involves the failure to pay ordered amounts, and the State has introduced evidence of nonpayment, the burden shifts to the probationer to provide a reasonable excuse for the failure to pay. *Truitt v. State*, 2015 Ark. App. 276. It is the

SLIP OPINION

probationer's obligation to justify his failure to pay, and this shifting of the burden of production provides an opportunity to explain the reasons for nonpayment. *Id*. The State, however, shoulders the ultimate burden of proving that the probationer's failure to pay was inexcusable. *Id*.

Arkansas Code Annotated section 16–93–308(d) states, "If a court finds by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of his or her suspension or probation, the court may revoke the suspension or probation at any time prior to the expiration of the period of suspension or probation."

Condition number one of appellant's conditions of suspended imposition of sentence required him to "pay all fines, court costs, and restitution." Amy Peyton, the collector of fines for the Crittenden County Sheriff's Department, testified that she received documentation reflecting the following fines and costs assessed against appellant:  (1) $750 in fines; (2) $750 in fees under the original conviction; and (3) $500 in costs and fees from the first revocation. Ms. Peyton testified that she had not received any payments from appellant since the first revocation hearing. She further stated that appellant had not contacted her at all since 2008 to apprise her of where he was working, where he was living, or when he would begin paying his fines and costs. A copy of the computer-generated account that is kept at the sheriff's office, along with the corresponding ledger sheet, and the criminal cost bill from the trial court reflecting the amounts that Ms. Peyton testified to were introduced into evidence without objection.

Appellant testified that, upon his release on parole, he was employed with Delta Ice Service and Southland Greyhound Park. Appellant acknowledged that, despite being able to pay his fines, he failed to do so. He testified that he "didn't have no idea about [the fines]" and that he may have "lost [his] paperwork or something like that." Appellant testified that he was paying his parole fee. On cross-examination, appellant admitted that he had signed the conditions of suspended imposition of sentence. He also testified that the required costs sounded "familiar." Appellant conceded that he never called the sheriff's office to discuss his costs and fines and said he "never had no clue about that . . . I was just thinking about parole fees . . . ."

No testimony was offered through the parole officer, Ms. Mary Marshall, that he was behind on his parole payments, and appellant submits that his testimony was in harmony with that of Ms. Peyton in all respects. He maintains that his faithful payment of his parole fees, coupled with his evident ability and willingness to pay, constituted a "reasonable excuse" for his failure to pay.

We disagree. Through the testimony of Ms. Peyton and appellant, the State established that appellant violated the first condition of his suspension—that he pay all fines, costs, and restitution—and this single violation justifies revocation. *See Rudd v. State*, 76 Ark. App. 121, 61 S.W.3d 885 (2001). Because the State offered evidence of nonpayment, the burden shifted to appellant to justify his failure to pay. *See Truitt*, *supra*. As the case law makes clear, appellant's alleged confusion over the owed amounts does not justify his nonpayment. *See, e.g.*, *Burkhart v. State*, 2010 Ark. App. 462, at 5 (holding that defendant's alleged

confusion about her obligation to make payments did not constitute a sufficient excuse for her failure to pay).

Additionally, we defer to the trial court's superior position regarding questions of credibility and the weight to be given testimony and, after hearing the testimony of Ms. Peyton and appellant, the trial court found that appellant had violated the conditions of his suspended sentence by "never pay[ing] any money. . . ." Therefore, the trial court's determination that appellant inexcusably failed to pay his costs, fines, and fees is not clearly against the preponderance of the evidence, and we affirm.

## II. *Commission of Theft*

Additionally, appellant argues that the trial court clearly erred by finding that he committed theft, which was contrary to the preponderance of the evidence. Condition number two of appellant's suspended imposition of sentence required appellant to "live a law-abiding life, be of good behavior, and not violate any state, federal, or municipal law." The State alleged in its petition for revocation that appellant had violated this condition by committing residential burglary and theft of property. The trial court found that appellant had violated this condition, but appellant argues that the State's offered proof was insufficient to support that finding by a preponderance of the evidence.

Ms. Cambria Gatewood testified that someone had broken into her house and had stolen her air conditioner. She further testified that she had not given it to anyone or authorized anyone to take it. Ms. Gatewood explained that appellant cut her yard and "apparently" had stolen the air conditioner as payment. This testimony was corroborated by

appellant, who testified that Ms. Gatewood told him he was her "new yard person" after he mowed her yard the previous week. He admitted that he took the air conditioner from her back yard and sold it to a pawn shop. His testimony was corroborated by that of Detective Ira Roundtree of the Criminal Investigation Division of the West Memphis Police Department, who confirmed that the air conditioner was pawned by appellant in West Memphis.

Theft of property occurs when a person "[t]akes or exercises unauthorized control over . . . the property of another person with the purpose of depriving the owner of the property." Ark. Code Ann. § 5-36-103(a)(1) (Repl. 2013). According to appellant, an express oral contract existed between Ms. Gatewood and himself regarding the mowing of her yard, with the only missing terms being the amount and form of payment. He argues that the admitted taking of the property was not shown to be "unauthorized," as required by the statute, because it was taken as reasonable compensation for agreed-upon services provided. Appellant urges that, because the State failed to offer sufficient proof that appellant took the property of the alleged victim without authorization, the trial court's finding to the contrary by a preponderance of the evidence was erroneous.

We disagree and hold that the following evidence supports the trial court's finding. Ms. Gatewood testified that someone broke into her home around July 31, 2014, and stole her window-unit air conditioner, and that her neighbors told her who took it—appellant. Ms. Gatewood's back door also had been pried open around the time that the air conditioner went missing. Ms. Gatewood further testified that she had not given the air conditioner to

anyone or authorized anyone to take it from her window. After visiting a pawn shop in West Memphis, Ms. Gatewood found and identified her stolen air conditioner.

Detective Roundtree testified that he conducted an interview with appellant regarding the theft. After going to the above-referenced pawn shop, Detective Roundtree learned that appellant had pawned the air conditioner. Detective Roundtree also testified that appellant had "placed a thumb print on the receipt for the pawn ticket, [and] he signed for it." Detective Roundtree retrieved the air conditioner and returned it to Ms. Gatewood. On cross-examination, Detective Roundtree testified that he questioned one of Ms. Gatewood's neighbors who witnessed the theft. The neighbor said that she saw "a young black male who cuts her grass normally loading something in the back of a black taxi."

Finally, appellant testified and admitted to having mowed Ms. Gatewood's grass and to stealing the air conditioner, referring to it as "the one that I did steal." Appellant stated that, while he did not break into the house, he did steal the air conditioner and sell it. On cross-examination, appellant acknowledged that he knew he could not steal air conditioners because he was on parole but that he had stolen it anyway. He said that he had pawned the air conditioner and taken the money, using a portion of the money to pay the taxi driver.

Based on the testimony of Ms. Gatewood, Detective Roundtree, and appellant, the trial court found that appellant stole the air conditioner, violating the terms of his suspended sentence. We hold that the record before us indicates that the trial court's finding was not clearly against the preponderance of the evidence. *See, e.g.*, *Wade v. State*, 64 Ark. App. 108, 983 S.W.2d 147 (1998). The trial court was in a superior position to evaluate the credibility

of the witnesses and to determine the weight to be given to their testimony. *Id*. Further, appellant admitted to stealing the air conditioner, thereby satisfying section 5–36–103(a)(1), which provides that "[a] person commits theft of property if he . . . knowingly . . . [t]akes or exercises unauthorized control over . . . the property of another person with the purpose of depriving the owner of the property." Accordingly, the trial court's finding was not clearly against the preponderance of the evidence and is affirmed.

Affirmed.

HARRISON and GRUBER, JJ., agree.

*Tyler C. Ginn*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Ashley Driver Younger*, Ass't Att'y Gen., for appellee.